UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CMG HOLDINGS GROUP, INC., as successor to XA THE EXPERIENTIAL AGENCY, INC., | Civil Action No.: 15-cv-05814-JPO |
| Plaintiff, | |
| vs. | **AFFIDAVIT OF** <br> **RONALD BURKHARDT** |
| JOSEPH WAGNER, HUDSON GRAY LLC, DARREN ANDERECK, JESSIE LOMMA, MICHAEL DAY, JEAN WILSON, ESTELLE PIZZO, STUDIO AG, LLC, REMIGIO GUDIN, and MIXED COMPANY, INC., | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| JOSEPH WAGNER, JEFFREY SMITH, DARREN ANDERECK, and JESSIE LOMMA, | |
| Third-Party Plaintiffs, | |
| vs. | |
| GLENN LAKEN and ALEXIS LAKEN, | |
| Third-Party Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RONALD BURKHARDT**, being duly sworn, deposes and says:

1. I am the former Executive Chairman of XA Experiential Agency, Inc. ("XA"), and former Director of XA's parent company, CMG

Holdings, Inc. ("CMG"). I have personal knowledge of the facts set forth herein.

2. I was employed by XA pursuant to a written employment agreement dated as of February 1, 2014 (the "Employment Agreement"), a copy of which is annexed hereto as **Exhibit 1**.

3. I was hired to have responsibility for all aspects of XA's business and, pursuant to the Employment Agreement, my duties included:

> (1) Be the liaison between XA and the CMG Board of Directors.
>
> (2) Instill a corporate vision and formulate a strategy to maximize the profitability of XA.
>
> (3) Oversee the spending of corporate assets infused into the company by the parent company.
>
> (4) Generate new business.
>
> (5) Supervise branding and PR efforts for XA itself.
>
> (6) Brand the XA name (along with it being a wholly owned sub of CMGO).
>
> (7) Search for acquisition candidates.
>
> (8) Interact with senior client management – look for organic growth from current clients.
>
> (9) Assist in identifying avenues for additional funding

and A/R financing.

(10) Keep Mr. Laken fully informed as to corporate developments at XA.

(11) Supervise CEO's, and COO's, output and efforts at agency.

(12) Enhance internal and external communications, including web, digital and traditional venues.

(13) Create and/or supervise advertising/brand ideas/concepts for agency, CMG divisions and clients.

(14) Look for new divisions under XA umbrella, as strategically relevant.

(15) Enhance company culture; seamlessly merge acquired companies.

(16) Motivate and inspire staff's best efforts – lead by example.

(17) Set high standards to maintain superior creative product and reputation.

(18) Search for and groom key talent to step in as work opportunities arise, or to replace under-achievers.

Exhibit 1, pg. 11, Ex. A.

4. I was employed through July 20, 2014. At all times while I was employed, I performed my duties in an excellent manner and achieved

or exceeded the goals which had been established for me.

5. I conducted due diligence about XA before agreeing to become an employee. As part of that process, I met with the then senior management of XA, including Joseph Wagner ("Wagner"), then the Chief Executive Officer, Darren Andereck ("Andereck"), then the President, and Jean Wilson ("Wilson"), then the Chief Operating Officer. I also reviewed XA's corporate books and records.

6. At ~~about~~ RRB the time that I conducted my review of XA's business, I was informed that XA did not have a corporate line of credit and, as a result, XA's senior management, Wagner and Andereck, had been using their personal credit cards to fund XA's corporate expenditures in order for XA to meet its obligations. I was told that XA's practice was to reimburse Wagner and Andereck once sufficient revenues were received. Wagner and Andereck submitted three (3) RRB years of their personal credit card statements to me for review. I determined that no expenses charged to XA were outside the normal and ordinary course of XA's business.

7. In addition, Wagner informed me via written memorandum dated January 27, 2014 that Andereck, Wilson and Wagner had an ownership interest in the entity, Studio AG, a company used to support XA's operational needs by supplying floral décor and fabrication services for XA's services to its clients. A copy of this memorandum is annexed hereto as **Exhibit 2**. Previously, Fiori XA, a subsidiary of XA's

predecessor, XA, Inc., provided this service for XA's clients. In 2009, however, CMG management decided to abandon Fiori XA's line of business. Thereafter, Wagner, Andereck, and Wilson formed Studio AG to provide these functions. The requirement of these types of services, and the consequential formation of Studio AG, was specifically disclosed in a memorandum dated December 4, 2009 from Wagner to Jim Ennis, the then Chief Operating Officer and Chief Financial Officer of CMG. A copy of this memorandum is annexed hereto as **Exhibit 3**. I reviewed a copy of this memorandum prior to becoming employed by XA.

8. I understand that XA has alleged that Wagner, Andereck, Wilson, Jeffrey Smith ("Smith"), Michael Day ("Day"), Romayio Gudin ("Gudin"), and Jessie Lomma ("Lomma"), all of whom are former employees of XA, have violated restrictions against competition and/or solicitation following their separation from employment with XA. In my review of XA's corporate records, I have never seen any document, including an employee handbook, signed by such individuals in which a restriction against competition or solicitation was included. I have never seen any employment or separation agreement entered into between XA and Andereck, Wilson, Smith, Day, Gudin or Lomma. The employment agreement entered into with Wagner did include such a restriction, but that agreement was terminated and superseded by a Settlement Agreement and Release, effective as of April 30, 2014 (the "April Settlement Agreement

and Release"), entered into between Wagner and XA at the direction of Glenn Laken ("Laken"), the Chairman of XA's parent company CMG. No such restriction against competition or solicitation of clients was included in that agreement. I specifically recall asking Laken about the lack of a non-solicitation provision in the April Settlement Agreement and Release. Laken stated that it was not a concern because of his opinion that Wagner no longer had any interest in the business of XA and that Wagner was going to focus on consulting.

9. I am not aware of any fraud or other improper activities by Wagner, Andereck, Wilson, Smith, Day, Gudin or Lomma while they were employed by XA. While I was employed by XA, I never discovered any wrongful conduct on their part. No such wrongful conduct RB was ever reported to CMG's Board of Directors that I recall RB while I was a member thereof.

RONALD BURKHARDT

Sworn to before me this
16th day of September, 2015

Notary Public

RICHARD ASHMEADE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01AS6282970
Qualified in Bronx County
Commission Expires May 28, 2017