**WINDELS MARX**
Windels Marx Lane & Mittendorf, LLP

Scott R. Matthews
212.237.1025
smatthews@windelsmarx.com

windelsmarx.com

156 West 56th Street | New York, NY 10019
T. 212.237.1000 | F. 212.262.1215

April 18, 2017

**Via ECF**

Hon. J. Paul Oetken, United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 706
New York, New York 10007

  Re: *CMG Holdings Group, Inc. v. Joseph Wagner, et al.*
     <u>15-cv-05814-JPO</u>

Dear Judge Oetken:

  This firm represents the Defendants in the above referenced action, and we hereby request, pursuant to paragraph 4(B) of Your Honor's Individual Practices in Civil Cases, an informal conference with the Court to discuss Document Request Nos. 13, 31, 33, 36, 49, 50, 65, and 67, to which plaintiff CMG Holdings Group, Inc. ("Plaintiff" or "CMG") has improperly objected on relevance grounds and refused to produce responsive documents. Specifically, the requested documents are relevant, *inter alia*, to Defendants' unclean hands defense. The parties have met and conferred by the exchange of correspondence, as well as by telephone on January 19, 2017 and on April 13, 2017, but remain at an impasse.

**The Claims and Defenses at Issue**

  In this case, Plaintiff accuses various former employees of XA, The Experiential Agency, Inc. ("XA"), which is wholly owned by CMG, a holding company, of misappropriating funds, seeking payment and/or reimbursement of personal credit card charges, diverting business opportunities to other companies, and, upon departing from XA for defendant HudsonGray, Inc., stealing trade secrets and even furniture. Because the alleged conspiracy took place over many years, included almost all of XA's employees, and involved all aspects of XA's operations, Plaintiff's allegations implicate all aspects of XA's and CMG's operations and governance. Based upon these allegations -- which Defendants deny as pure fiction -- the Second Amended and Revised Complaint asserts a number of causes of action, including RICO violations, breach of contract, conversion, and unjust enrichment.

  Among their many defenses in this action, Defendants' second defense asserts that, "Plaintiff's equitable claims are barred by the doctrine of unclean hands." (Dkt. No. 43, ¶ 288.) Defendants alleged several specific incidents to support the defense:



Hon. J. Paul Oetken
April 18, 2017
Page 2

- Plaintiff's Chairman and CEO, Glenn Laken ("Laken"), was convicted of, *inter alia*, racketeering conspiracy and securities fraud (*Id.*, ¶ 290);

- Laken directed defendant Joseph Wagner, while he was still employed by XA, to have an Internet consulting firm "scrub" Laken's Google listing so that Internet searches of Laken's name would not reveal his criminal conviction (*Id.*, ¶ 291);

- Laken unlawfully acted as a control person for CMG without proper disclosure. For instance, Laken signed the Release Agreement at issue in this case and ordered the transfer of settlement funds to Mr. Wagner as the "Chairman / CEO" of the company, several weeks prior to his supposed appointment by the Board or its public disclosure in a Form 8-K (*Id.*, ¶¶ 292, 295);

- Laken unlawfully traded CMG stock, in violation of insider trading laws, under the name of Sol Mlot, an arrangement described in an Affidavit by Mr. Mlot (Dkt. No. 43-1),[1] memorialized in writing and signed by Laken (Dkt. No. 43-2), and acknowledged in writing by Laken's attorney (Dkt. No. 43-3) (Dkt. No. 43, ¶ 292-294); and

- Laken's stock manipulation has continued with this litigation, with CMG issuing a press release on July 16, 2015 advertising a "new class of series A preferred shares that will have first priority payout from any litigation settlement" to attract "capital to support CMG's ongoing civil RICO (Racketeer Influenced and Corrupt Organizations) lawsuit against former employees seeking total damages of $20 million" – which offering is also a violation of federal law. (*Id.*, ¶ 297.)

It has also become apparent that, during the pendency of this litigation, Laken has sought to manipulate the price of CMG shares through comments on stock trading websites, made under various accounts, with information that could only come from an insider.

### The Document Requests at Issue

Defendants have requested the production of documents concerning Laken's and CMG's unlawful and dishonest action in support of their unclean hands defense, and include as follows:

---

[1] Plaintiff's counsel has proffered a Declaration by Mr. Mlot, purporting to discredit the Affidavit included as an exhibit to Defendants' Answer. Mr. Mlot subsequently averred under oath that the Declaration was presented to him by Laken and that he signed it under false pretenses. In any event, even under Plaintiff's preferred version of events, Laken traded CMG stock under Mr. Mlot's name, which violates federal securities law. Thus, even if the Court were to credit the Declaration of Mr. Mlot procured by Plaintiff, Laken's actions support an unclean hands defense.

{11336479:2}



Hon. J. Paul Oetken
April 18, 2017
Page 3

- Request No. 13 seeks documents concerning credit card reimbursement requests by former Board member Jeff Devlin, former Executive Chairman Richard Burkhardt, President Alexis Laken, and Chairman / CEO Laken.

- Requests No. 31 and 33 seek documents concerning stock trades, relating to certain companies, entered into by Laken, whether in his own name or anyone else's, along with communications with Mr. Ofsink, who confirmed the existence of such trades;

- Request No. 36 seeks documents concerning CMG stock held by CMG;

- Requests No. 49 and 50 seek documents concerning transactions between CMG and entities with which Laken, or a family member, has an interest;

- Request No. 65 seeks documents concerning posts concerning XA or CMG on the stock board on intestorhub.com;

- Request No. 67 seeks documents concerning various transactions, or contemplated transactions, discussed in CMG's public disclosures filed with the Securities and Exchange Commission.

### Plaintiff's Objections are Improper

To the Requests described above, Plaintiff has objected on the grounds that each is "overbroad, seeks irrelevant documents, and is not reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1), however, provides that "[p]arties may obtain discovery regarding *any* non-privileged matter, that is relevant to any party's claim or defense." (Emphasis added). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Discovery is normally allowed into any matter that bears upon the issues or reasonably could lead to relevant information." *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Moreover, in the Second Circuit, "this obviously broad rule is liberally construed." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). Because each of the Requests at issue is relevant to Defendants' unclean hands defense, and could reasonably lead to relevant information, each of the Requests is proper.

In response to Request No. 13, Plaintiff agreed to produce credit card reimbursement requests by Mr. Devlin and Mr. Burkhardt, former executives who are not represented by CMG's counsel, but objects to the production of reimbursement requests by the Lakens on relevance grounds. Obviously, reimbursement requests by Laken and Alexis Laken are much more relevant than those by Mr. Devlin and Mr. Burkhardt, whose involvement in this litigation is

{11336479:2}



Hon. J. Paul Oetken
April 18, 2017
Page 4

peripheral. Plaintiff's real concern is that these documents will show malfeasance by the Lakens on an action of which Plaintiff has ostentatiously – and falsely – accused the individual defendants. According to Plaintiff, everyone's credit card reimbursement requests are fair game, except for Laken, the Chairman and CEO, and Alexis, the President. The Lakens' use of corporate credit cards is directly relevant to (i) XA's credit card reimbursement policy; (ii) any claims against Defendants for violating that policy; (iii) Defendants' unclean hands defense; and (iv) any credibility determination regarding the Lakens.

Requests No. 31, 33, 36, and 65 all relate to Laken's stock trades of CMG and other companies under false names, his posting, under other identities, of information to a stock trading website to affect CMG's share price, and CMG stock held by CMG, and thus still under Laken's control. Documents concerning Laken's unlawful manipulation of CMG stock are relevant to this litigation because this litigation is part of the same scheme. CMG, in violation of securities law, advertised an offering of shares that would have first priority payout from any litigation settlement. After interposing outrageous allegations against Defendants with an inflated demand for damages, CMG sought to receive a payday, by way of an inflated stock price before Defendants had a chance to rebut the specious allegations. Documents showing that this litigation is part of a grander scheme to unlawfully affect CMG's stock price, rather than an attempt to obtain damages as a result of improper conduct, will demonstrate the Second Amended Complaint's allegations are false. The documents will also be directly relevant to Defendants' unclean hands defense, as CMG cannot seek equity from this Court if it has commenced the litigation in bad faith or otherwise acted unlawfully with respect to the subject matter at issue.

Requests No. 49, 50, and 67 seek documents concerning various transactions with entities with which Laken is interested or which have been discussed in public filings. These documents are again relevant to Defendants' unclean hands defense – if Plaintiff is operated without any regard to corporate or securities law, it cannot seek equity as against Defendants for alleged malfeasance of such law.

\*    \*    \*    \*

We look forward to discussing the above issues with the Court and Plaintiff's counsel. Should the Court need any additional information, we will be happy to provide same.

Very truly yours,

/s Scott R. Matthews

Scott R. Matthews

{11336479:2}



Hon. J. Paul Oetken
April 18, 2017
Page 5

cc:     Paul A. Lieberman, Esq. (via email)
        Lawrence Steckman, Esq. (via email)

{11336479:2}