H531cmgc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CMG Holdings Group as
    successor to XA The
4   Experimental Agency, Inc.,

5              Plaintiff,

6         v.                              15 Civ. 5814 (JPO)

7   Joseph Wagner, et al.,

8              Defendants.               Telephone Conference

9   ------------------------------x
                                         New York, N.Y.
10                                       May 3, 2017
                                         11:02 a.m.
11
    Before:
12
                        HON. J. PAUL OETKEN,
13
                                         District Judge
14
                            APPEARANCES
15                         (Via Telephone)

16  EATON & VAN WINKLE LLP
         Attorneys for Plaintiff
17  BY:  LAWRENCE A. STECKMAN, ESQ.
         ADAM J. RADER, ESQ.
18
    WINDELS, MARX, LANE AND MITTENDORF LLP
19       Attorneys for Defendants
    BY:  SCOTT R. MATTHEWS, ESQ.
20       JAMES PATRICK TRACY, ESQ.

21

22

23

24

25

H531cmgc

 1              (Case called)

 2              THE DEPUTY CLERK:  Starting with plaintiff's counsel,

 3       can I have counsel state their appearances for the record,

 4       please.

 5              MR. RADER:  Adam J. Rader and Lawrence A. Steckman

 6       from Eaton and van Winkle on behalf of the plaintiffs.

 7              THE DEPUTY CLERK:  Thank you.

 8              And for defendants?

 9              MR. MATTHEWS:  Scott R. Matthews and James Tracy from

10       Windels, Marx, Lane and Mittendorf for all defendants.

11              THE COURT:  Good morning, folks.  This is Judge

12       Oetken.  Thanks for joining the call.

13              I scheduled this call as a result of the April 18th

14       letter requesting a conference regarding a discovery issue from

15       defense counsel and the response on April 21st from

16       plaintiff's counsel.  So I gather you are in the middle of

17       discovery.  How is discovery going?

18              MR. RADER:  We're cooperating and identifying --

19              THE COURT:  Who is speaking?

20              MR. RADER:  I'm sorry.  This is Adam J. Rader

21       speaking.  The parties are collaborating on identifying issues

22       and are working to move to the next stage of the exchange of

23       documents.

24              THE COURT:  Mr. Rader -- oh, you haven't exchanged

25       documents yet?

H531cmgc

1           MR. RADER:  No, your Honor.  This is Adam Rader

2     speaking again.

3           THE COURT:  Have you had settlement discussions?

4           MR. RADER:  Again, this is Adam Rader speaking.  No,

5     your Honor, we have not yet had any substantive settlement

6     discussions.

7           THE COURT:  Okay.  Mr. Rader, do you have equitable

8     claims remaining in this case?

9           MR. RADER:  Your Honor, I don't believe so.  I know

10    that there was a section in there but they haven't identified

11    those claims, so I'm not certain what those claims are alleged

12    to be.

13          THE COURT:  Well, you had them, but I dismissed them.

14    I mean, you had a whole count that --

15          MR. RADER:  This is Adam Rader.  I believe that is the

16    case, sir.

17          THE COURT:  So Mr. Matthews or Mr. Tracy, why is the

18    unclean hands defense pertinent or why does it remain?  Because

19    that was a defense to the equitable claims, as I recall.

20          MR. MATTHEWS:  Your Honor, this is Scott Matthews

21    speaking.  I believe that the claim of unjust enrichment

22    remains in the action.

23          THE COURT:  Yes, it does.

24          MR. MATTHEWS:  And I believe that that is an equitable

25    claim, and that's why we are seeking to interpose an

H531cmgc

1    affirmative defense of unclean hands as well to the claim for

2    punitive damages.

3         THE COURT:  Okay.  I'm trying to remember.  I think

4    the unjust enrichment claim remains.

5         So why don't you respond, Mr. Tracy.  Is that who was

6    speaking?

7         MR. MATTHEWS:  No, your Honor.  This is Scott

8    Matthews.

9         THE COURT:  Oh, Mr. Matthews.  Mr. Matthews, why don't

10   you respond to the points made in plaintiff's counsel's letter

11   of April 21st, specifically the argument that these

12   categories don't sufficiently relate to conduct that is

13   arguably directed at the parties, or sort of sufficiently tied

14   to the transactions that form the basis of the claims in the

15   case as opposed to kind of general misconduct type allegations.

16        MR. MATTHEWS:  Thank you, your Honor.  Again, this is

17   Scott Matthews.

18        The plaintiff has alleged numerous wrongdoings by my

19   client that range from unauthorized requests for payment and

20   reimbursement of expenses that we submit are business expenses

21   and not personal expenses to outright staff, equipment,

22   furniture, services, etc.  We deny each and every one of these

23   claims.  Each and every one of them will be shown to be without

24   merit, but in prosecuting this action, the plaintiff has also

25   published a solicitation for financing via this investor hub

H531cmgc

1   website and via a press release wherein the plaintiff stated

2   that it was offering a new classic Series A preferred share so

3   it will have a first priority payout, from any litigation

4   settlement.  The company stated that under the anticipated

5   program, it would authorize a total of 4 million Series A

6   preferred shares with a liquidation preference of 1 dollar per

7   share, an annual dividend yield of 5 percent of perpetual time

8   horizon, and that the purpose of this offering is to, quote,

9   remove those shareholders that are most interested in the

10  possible recovery from prior employees' alleged misconduct.

11          THE COURT:  Right.  Right.  I saw that in your letter.

12  I understand.  I mean, I guess you could argue that that shows

13  that -- well, it shows what it shows.  It shows that they've

14  issued some securities relating -- which would be focused on

15  any benefit derived from this lawsuit.  Maybe that's improper,

16  maybe it's sketchy, I don't know, but how does that relate to

17  the claims against your client?

18          MR. MATTHEWS:  Well, what it is is that it shows that

19  this lawsuit, we submit, is, in essence, a sham, designed

20  solely to prop up the stock amount of CMG.  XA is no longer an

21  operating entity, as far as we can tell, and it has no

22  revenues.  The only thing that it has is this lawsuit, and CMG

23  continually posts information on investor websites about how it

24  is likely to recover monies in this website, claiming that --

25  in this lawsuit, claiming that it's going to somehow achieve a

H531cmgc

1   $20 million recovery.  As part of that, we've alleged that

2   Mr. Laken has made unauthorized trades and has traded in

3   somebody else's name under this very stock, as well as other

4   companies.  It fits a pattern of unlawful conduct now directed

5   at my clients and directed specifically to this litigation, and

6   that's why we believe that we're entitled to say that

7   Mr. Laken, who's the controlling owner and director, chairman,

8   CEO of CMG, is not entitled to come to this court and ask for

9   equitable relief when he has these bad acts himself ongoing.

10  We believe that the cases that they cited in their letter are

11  inapplicable.  The *Cohen Lans v. Naseman* case, which this Court

12  is aware of, had to do with a law firm suing a client for

13  failure to make payment of legal fees, and the client alleged

14  that the law firm had unclean hands because it failed to secure

15  a settlement.  Your Honor ruled that that was not the reason

16  why the settlement didn't go forward and, in any event, it was

17  not a proper defense to the claim.  And I want to point out

18  that that decision that they cite was a summary judgment

19  decision that the court considered.  Here we're just seeking

20  discovery of information concerning trades conducted by

21  Mr. Laken, statements made on this investor hub website that

22  are purportedly anonymous but they would be party statements if

23  Mr. Laken or someone otherwise affiliated with CMG is making

24  them, and in order just to get to obtain information that could

25  lead to discoverable admissible evidence.  It's not a summary

H531cmgc

1   judgment motion, your Honor.

2           THE COURT:  Right.  I understand.

3           MR. MATTHEWS:  Okay.

4           THE COURT:  I can't remember -- have you signed a

5   protective order in this case?

6           MR. MATTHEWS:  Your Honor, this is Scott Matthews.

7   We've negotiated a protective order.  It has not been signed

8   and submitted to the Court, but I believe we are prepared to do

9   so.

10          THE COURT:  Okay.  Mr. Rader, or Mr. Steckman, would

11  you like to respond.

12          MR. RADER:  Yes, your Honor.  This is Adam Rader.

13          The first point is, even with Mr. Matthews'

14  explanation, it's very tenuous.  I don't say it meets the

15  standard of direct relationship to this litigation or even an

16  attenuated relationship to this litigation.  There's no

17  allegation of any injury to the defendants.  They're claiming

18  that that somehow shows that the allegations should be

19  discredited in this case.  But the way to show that would be to

20  answer and disprove the allegations.  The standards are clear.

21  In the *Bistricer* case that we cited, that was directly on point

22  in that in that case, after a magistrate had ordered discovery,

23  the court in the Eastern District overruled and denied

24  discovery and struck an unclean hands defense because it wasn't

25  directly related to the subject matter of the litigation.

H531cmgc

1    We've also cited cases where, when RICO was involved, as it is

2    in this case, there's no unclean hands defense, even if there

3    is a direct connection to the litigation, which in this case

4    there isn't, so you don't have to reach that issue because the

5    RICO claims have been held to be analogous to antitrust suits,

6    where RICO claims and unclean hands defense cannot be raised,

7    and the policy to deter conduct that forms the basis for RICO

8    should not allow parties to come and point the finger at the

9    other side.

10           In addition, although not connected to the litigation,

11   the allegations that he's talking about of the statement of the

12   sale of CMG stock that supports this litigation was just put

13   out as a talking point, but there wasn't actually an issuance

14   of any security in relation to that.

15           Other than that, your Honor, we rest on what we've

16   submitted.  Thank you.

17           THE COURT:  Okay.  Well, I take your point.  I think

18   the unclean hands defense I'm persuaded is still in the case

19   because there is unjust enrichment.  These matters could also

20   potentially be pertinent to the course of conduct issues and

21   certainly relevant to whether this is a sham lawsuit for some

22   reason.  I don't know.  In any event, if this were a narrowly

23   focused contract dispute, I think the proportionality principle

24   in the federal rules would justify limitations of discovery for

25   things like this.  However, this is a broad-based, extremely

H531cmgc

1    broad-based RICO allegation with all sorts of claims involving

2    all sorts of conduct, seeking $20 million against a bunch of

3    former employees, and given the breadth of that, I think it is

4    discoverable.  I think all of these categories are

5    discoverable.

6            Treating the letters as a motion to compel by

7    defendants, the motion is granted and the protective order is

8    denied.  That's my ruling.

9            Anything else?

10           MR. MATTHEWS:  No, your Honor.  Thank you very much.

11           MR. RADER:  Thank you, your Honor.

12           THE COURT:  Thank you.  We're adjourned.

13           (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25