

**WINDELS MARX** | Windels Marx Lane & Mittendorf, LLP

Scott R. Matthews
212.237.1025
smatthews@windelsmarx.com

windelsmarx.com

156 West 56th Street  |  New York, NY 10019
T. 212.237.1000  |  F. 212.262.1215

September 25, 2017

**Via ECF**

Hon. J. Paul Oetken, United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 706
New York, New York 10007

   Re: *CMG Holdings Group, Inc. v. Joseph Wagner, et al.*
     **15-cv-05814-JPO**

Dear Judge Oetken:

  We represent Defendants and Third Party Plaintiffs in the above referenced action, and we hereby request, pursuant to paragraph 4(B) of Your Honor's Individual Practices in Civil Cases, an informal conference with the Court to address plaintiff CMG Holdings Group, Inc.'s ("Plaintiff" or "CMG") improper "document dump" of documents that Defendants did not request, along with CMG's failure to produce documents previously ordered by this Court to be produced.

  Specifically, CMG has produced over 590,000 pages of documents (the "First Production") consisting of all of the documents on the servers of XA, The Experiential Agency, Inc. ("XA"),[1] *which CMG's prior counsel admits were not reviewed for responsiveness prior to production.* However, CMG has produced only roughly 600 pages of documents other than those found on XA's servers, despite Defendants' numerous requests for documents from CMG and Third Party Defendants, as opposed to XA. Thus, they could not have responded fully to those requests. Similarly, CMG and Third Party Defendants have failed, despite the Court's Order of May 3, 2017, to produce any documents in response to many requests concerning the defense of "unclean hands".

  The parties have met and conferred by telephone on July 5, August 22, and September 25, 2017, but remain at an impasse.

**I. CMG's First Production Violates F.R.C.P. Rule 34**

  CMG's First Production constitutes an impermissible "document dump" of over 590,000 individual pages of documents. The First Request for Production of Documents to Plaintiff and Third-Party Defendants From Defendants and Third-Party Plaintiffs, dated November 21, 2016 (the "Requests") include 75 requests for specific categories of documents. Many of the requests

---

[1] By way of review, CMG is the former parent company of XA.

{11397057:3}



Hon. J. Paul Oetken
September 25, 2017
Page 2

are highly specific and directed to specific issues in dispute; for instance, Request No. 6 requests "[a]ll acknowledgements of XA employee handbooks signed by the Defendants."

Upon receipt of the First Production on July 5, 2017, I reviewed the production prior to participating in a telephone call with CMG's prior counsel scheduled for that day. Although I had time only for a brief review before the call, I found many of the documents to be non-responsive to the Requests. For example, the First Production includes spam email advertisements that are obviously irrelevant to any dispute between the parties. During the July 5 meet and confer, I advised CMG's prior counsel of these issues. Counsel stated that the documents consisted of all of the documents "recovered"[2] from XA's servers during the relevant time period and admitted that his firm did not review the documents individually, but instead merely "eye-balled" portions of the production. In other words, CMG simply produced *all* of XA's electronically stored information, without any systematic review for responsiveness.[3]

Rule 34 of the Federal Rule of Civil Procedure prohibits "simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought." *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009). This is precisely what CMG admittedly did.

CMG's new set of attorneys have provided two defenses for the production of 590,000 pages of documents without first reviewing them for responsiveness. First, that the documents are responsive because they showed which documents were supposedly recovered from XA's servers. Defendants' Request No. 3, however, only seeks the production of "documents recovered from XA's recovered server *concerning the allegations set forth in the Second Amended Complaint*." (Emphasis added.) CMG did not assert any specific objection to the request. Thus, any production of documents recovered from the server should be limited to documents concerning CMG's allegations, and not simply all documents supposedly recovered from the servers.

CMG claims to have produced these documents to corroborate its allegation that Defendants deleted documents from XA's servers, but it has failed to provide documents relevant to just such an inquiry. Defendants' Request No. 61 seeks the production of any retainer agreement with any entity charged with recovering deleted XA files, Request No. 62 seeks

---

[2] Defendants deny deleting any documents from the servers outside of the regular course of business, such that it is not clear why any documents would have to be recovered from the servers. Moreover, CMG's ability to "recover" *all* of the documents from the server suggests that they were never deleted in the first place.

[3] In contrast, Defendants produced 70,544 pages of documents organized in folders corresponding to the requests made by Plaintiff.

{11397057:3}



Hon. J. Paul Oetken
September 25, 2017
Page 3

communications with any firm that recovered emails or files deleted by Defendants, and Request No. 63 seeks any documents evidencing that Defendants deleted documents from the servers. CMG has failed to identify any documents in its production responsive to these requests, undermining their stated purpose for producing such an extraordinary number of documents.

CMG's second justification is that, even if they are not responsive to any specific request, CMG is nonetheless producing the documents in support of its claims. Although CMG is entitled to produce documents in support of its claim, it cannot hide the documents that are actually responsive to Defendants' requests in a flood of documents that Defendants did not request. Indeed, that is the definition of a "document dump," which, as shown above, is not permitted under Rule 34.

Accordingly, Defendants have rejected the First Production, demanded that CMG review documents XA000001-XA590969 and produce only those documents that are, in fact, responsive to the Requests, or to identify which documents within the First Production are responsive to which particular Requests. CMG has refused to take any steps towards correcting the deficiencies in the First Production, and instead insists that Defendants review *all* of the documents located on XA's servers, regardless of relevance to this dispute. The Federal Rules, however, place that burden upon CMG, not Defendants. If Defendants are required to sift through the First Production for the responsive documents therein, CMG should bear the costs of doing so, including reimbursement for the retention of an electronic discovery vendor and attorneys' fees incurred as part of the review.

## II. The Remainder of the Production is Deficient

Other than its 590,000 page document dump from XA's servers, CMG and the Third Party Defendants have produced only about 600 pages of documents originating from other sources. The Requests, however, include numerous requests for CMG documents and for documents that would have been created after Defendants resigned their employment from XA, and thus would not have to be "recovered" from XA servers. For example, the Requests include the following:

- Documents concerning CMG's corporate governance, such as by-laws, certificate of incorporation, etc. (Request No. 8);

- Documents concerning the ownership or corporate status of XA Scenes and XA Fiori (Request No. 20);

{11397057:3}



- Documents concerning CMG's oversight and review of XA's operations and its review of XA financial documents, both during and after Defendants' tenure at XA (Request No. 29, 38, 42, 43, 44);

- CMG's financial statements and documents concerning its revenues and profits (Request No. 39, 48);

- Documents concerning XA's revenues and profits after Defendants' resignation from XA (Request No. 48); and

- Certain meeting minutes and resolutions from the CMG Board of Directors concerning issues relevant to this litigation (Request No. 41).

These requests seek documents that would not have been stored on the XA servers at the time the Defendants resigned from XA, and thus cannot be included in the First Production. CMG's counsel, however, has advised that it has no further documents to produce.

Similarly, Plaintiff's production does not include any documents responsive to many of Defendants' request concerning their "unclean hands" defense:

- Request No. 13: documents concerning credit card reimbursement requests by former Board member Jeff Devlin, former Executive Chairman Richard Burkhardt, President Alexis Laken, and Chairman / CEO Glenn Laken;

- Requests No. 31 and 33: documents concerning stock trades, relating to certain companies, entered into by Laken, whether in his own name or anyone else's, along with communications with Darren Ofsink, Esq., Laken's attorney, who confirmed the existence of such trades in writing;

- Request No. 36: documents concerning CMG stock held by CMG;

- Requests No. 49 and 50: documents concerning transactions between CMG and entities with which Laken, or a family member, has an interest;

- Request No. 65: documents concerning posts concerning XA or CMG on the stock board on investorhub.com;

- Request No. 67: documents concerning various transactions, or contemplated transactions, discussed in CMG's public disclosures filed with the Securities and Exchange Commission;

{11397057:3}



Hon. J. Paul Oetken
September 25, 2017
Page 5

        Over CMG's and the Third Party Defendants' objections, the Court ordered the production of all documents responsive to these Requests. (Dkt. No. 58.)  To date, however, they have not produced any documents responsive to Requests Nos. 13, 31, 33, 36, 49, 50 and 65. For example, there has been no production of credit card reimbursements sought by Mr. Devlin, Mr. Burkhardt, Ms. Laken or Mr. Laken, which is known to be in existence, both from personal involvement of the parties to this dispute and from the prior objections.[4]   Similarly, no documents concerning Mr. Laken's stock trades, under his name or a third party's name, have been produced, despite the fact that Mr. Laken's attorney confirmed in writing the existence of such trades.

        Although it appears that some of the documents produced are responsive to Requests Nos. 49, 50, and 67, it seems unlikely that they constitute all of the documents in CMG's or Third Party Defendants' possession, custody, or control responsive to those Requests. Notwithstanding this, counsel states that their clients advise that there are no additional documents to produce.

        Defendants seek an Order for the production of all outstanding documents, or a sworn statement, by someone with personal knowledge, that such documents do not in fact exist.

**III. Error in Revised Scheduling Order**

        Finally, we ask the Court to correct an apparent error in the Revised Scheduling Order, dated August 25, 2017 (the "Revised Order") (Dkt. No. 60.)  The Revised Order directs that all expert disclosure be completed by May 14, 2018, but provides Defendants until June 8, 2018 to serve their expert disclosures.  We request that the completion of expert discovery be extended.

                        *           *           *           *

        Thank you for Your Honor's consideration of these issues.  We are available to provide additional information or documentation at the Court's request.

                                        Respectfully yours,

                                        Scott R. Matthews

cc:     All Counsel of Record

---

[4] Plaintiff's initial position – agreeing to produce reimbursement requests from Mr. Devlin and Mr. Burkhardt, but objecting to requests from Ms. Laken and Mr. Laken – confirms that such documents exist for all four individuals.

{11397057:3}