**WINDELS MARX**

Windels Marx Lane & Mittendorf, LLP

windelsmarx.com

**Scott R. Matthews**
212.237.1025
smatthews@windelsmarx.com

156 West 56th Street | New York, NY 10019
T. 212.237.1000 | F. 212.262.1215

February 8, 2018

**Via ECF**

Hon. J. Paul Oetken, United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 706
New York, New York 10007

Re: *CMG Holdings Group, Inc. v. Joseph Wagner, et al.*
15-cv-05814-JPO

Dear Judge Oetken:

This firm represents the Defendants in the above-referenced action. On January 25, 2018, Your Honor directed the parties to file a letter motion concerning discovery disputes that could not be resolved by February 8, 2018. Plaintiff made a supplemental production on January 26, 2018 and counsel has informed me that a further supplemental production will be made today and next week, and counsel for the parties met and conferred numerous times by email and on February 5, 2018 by telephone, but certain issues remain. Defendants, therefore, respectfully request an informal conference to address documents that Plaintiff and Third-Party Defendants Glenn Laken and Alexis Laken have failed to produce, despite the fact that this Court ordered production of many of the requested documents on May 3, 2017. (Dkt. No. 58.) This issue is particularly significant given the history of deficiencies with Plaintiff's document production, including originally producing 590,969 pages of documents without any prior review for responsiveness and then producing approximately 30,000 documents without identifying the requests to which they are responsive. Below, we identify the current outstanding documents and, where available, Plaintiff's stated reasons for failing to produce the documents.

### A. Corporate Governance Documents

Plaintiff has not produced documents concerning CMG's and XA's corporate governance, including:

- Request No. 8: Documents concerning CMG's corporate governance, such as by-laws, certificate of incorporation, Board minutes and resolutions, etc. On January 26, 2018, Plaintiff produced certain documents it obtained through subpoena to one of its prior auditors. Among those documents were meeting minutes that had been provided to CMG's accountants in connection with the audit. No other corporate governance documents have been produced.



Hon. J. Paul Oetken
February 8, 2018
Page 2

- Request No. 34: Documents concerning Glenn Laken's election or appointment to CMG's Board, any position Laken held at CMG or XA, and the reporting of Laken's assumption of any office or power at CMG or XA to the SEC, shareholders, or any other entity.

- Request No. 35: Documents concerning how Laken came to control CMG.

- Request No. 41: Certain meeting minutes and resolutions from the CMG Board of Directors concerning issues relevant to this litigation. Certain meeting minutes have been produced, but none concerning the specific issues delineated in this request.

### B. CMG Financial and Oversight Documents

Plaintiff has produced certain financial records for XA for the year 2014, along with documents from its auditor dating from prior to 2014. Plaintiff has failed to produce documents responsive to the following demands:

- Request No. 13: American Express coded statements for charges incurred by Jeff Devlin, Ron Burkardt, Alexis Laken and Glenn Laken submitted to XA for payment or reimbursement. Plaintiff initially objected to producing such documents in regards to Glenn and Alexis Laken (but agreed to produce documents regarding Devlin and Burkhardt), but the Court overruled the objection and ordered Plaintiff to produce all documents responsive to this request on May 3, 2017. (Dkt. No. 58.) Plaintiff has produced certain responsive documents from prior to the Defendants' 2014 resignation from XA, but nothing concerning the Lakens or dated after Defendants' resignation. This is important, because Glenn and Alexis Laken exercised direct control of XA at that time and submitted reimbursement claims based on credit card expenditures. Plaintiff has made very alarming – and wholly unsubstantiated – allegations that Defendants stole from XA through improper expense reimbursement requests. Plaintiff's refusal to hand over their own documents concerning the same common business reimbursement practice – despite a Court order to do so – is reprehensible. Plaintiff's attorney recently stated that certain additional documents may be produced shortly. Given the failure to abide by the prior Court order, increasing delays in discovery and the Court's deadline to file this letter motion, Defendants raise this issue now.

- Request Nos. 29, 38, 42, 43, and 44: Documents concerning CMG's oversight and review of XA's operations and its review of XA financial documents, both before and after Defendants' resignation from XA. As noted above, CMG has produced documents reviewed by its former auditors for years prior to 2014. Plaintiff has not produced any audit documents for 2014 and after, nor any documents concerning any investigation by

{11499880:2}



Hon. J. Paul Oetken
February 8, 2018
Page 3

      Glenn Laken (Request No. 42) or by Burkhardt (Request No. 43) concerning XA's operations.

- Request Nos. 47 and 48: Documents concerning XA's and CMG's revenues and profits after Defendants' resignation from XA. The audit documents produced thus far do not cover this time period. In December, Plaintiff issued subpoenas to its post-2014 auditors for documents responsive to these requests. It is not clear, however, why CMG does not possess any documents concerning its own revenues and profits, or whether its auditors will not produce these documents. Defendants made this request in November 2016 and no documents have been produced to date.

### C. Documents Concerning Plaintiff's Investigation Into, Or Realization of, the Alleged Conspiracy

      Plaintiff alleges that it discovered, at some point after Defendants resigned from XA in 2014, that Defendants had formed a conspiracy to, *inter alia*, divert business from XA, steal property from XA and delete XA's computer and physical records to conceal such wrongdoing. Indeed, the words "IT", "erase", "delete", "destroy", "recover" and "restore" appear in the Second Amended Complaint seventy-six (76) times. Despite this, Plaintiff has produced some email exchanges with XA's landlord and other parties that appear to be part of Plaintiff's investigation, along with internal emails in which CMG's officers hypothesize that Defendants committed wrongdoing, but Plaintiff has not produced *any* documents evidencing any conspiracy or theft. Plaintiff has produced no communications with the computer expert who allegedly conducted the investigation and recovered the data, Pedro Faria, no report authored by Mr. Faria, no payments to Mr. Faria, and no other documents evidencing that any such forensic computer investigation actually took place, much less that evidence in support of these allegations exists.

      Plaintiff must produce documents (or supplement prior productions) for the following requests, or admit that no such documents exist:

- Request No. 44: Documents concerning any investigation of Defendants' actions after their resignation from XA.

- Request No. 45: Communications with an accountant or financial adviser concerning XA financial records or any investigation into such records after the Defendants' resignations.

- Request No. 61: The retainer agreement with the firm or consultant charged with recovering any deleted XA emails or files.

{11499880:2}



Hon. J. Paul Oetken
February 8, 2018
Page 4

- Request No. 62: All communications with any firm or consultant who recovered files or emails deleted by any Defendant.

- Request No. 63: All documents or communications evidencing that any Defendant deleted files or emails, or otherwise attempted to conceal any wrongdoing against XA or CMG. Plaintiff's counsel has recently stated that certain documents may be produced.

**D. Unclean Hands Defense**

Despite this Court's order of May 3, 2017 (Dkt. No. 58), Plaintiff has still failed to produce documents relating to Defendants' unclean hands defense. Specifically, Plaintiff must produce documents responsive to the following demands:

- Request Nos. 31 and 33: Documents concerning stock trades, relating to certain companies, entered into by Glenn Laken, whether in his own name or anyone else's, along with communications with Darren Ofsink, Esq., Laken's attorney, who confirmed the existence of such trades in writing. In any event, these documents were requested well over a year ago, Plaintiff and Laken objected, and this Court ordered that they be produced. (Dkt. No. 58.) In our meet and confer on January 23, 2018, Plaintiff's counsel stated, for the first time, that Plaintiff and Laken do not have possession, custody, or control of the accounts used to trade these stocks. Counsel also stated that he would subpoena Mr. Ofsink for his records. During our meet and confer on February 5, 2018, Plaintiff's counsel advised that Laken made trades in multiple accounts in the name of his wife, Barbara Laken, and under Infinite Alpha, Inc., a firm in which he holds an interest, but, for reasons not stated, that Laken may not now have access to these accounts and that Plaintiff would subpoena the accounts. We are confused by the need for subpoenas to obtain information for accounts controlled by Laken. Also, it is not clear why Laken would not have copies of his communications with Mr. Ofsink, or whether a subpoena to him would be successful – according to media reports, Mr. Ofsink pleaded guilty to one count of conspiracy to commit securities fraud on October 18, 2017. It is clear that only now has Plaintiff and Laken apparently begun searching for responsive documents.

- Request Nos. 49 and 50: Documents concerning transactions between CMG and entities with which Laken, or a family member, has an interest. Plaintiff has produced certain documents concerning a loan between Barbara Laken and CMG. However, Defendants believe that other transactions occurred, but no other documents have been produced (*e.g.*, a consulting agreement with Infinite Alpha).

- Request No. 66: Documents concerning Laken's agreement with Sol Mlot, along with any other agreement by Laken to sell or buy share under another person or entity's name.

{11499880:2}



Hon. J. Paul Oetken
February 8, 2018
Page 5

- Request No. 67: Documents concerning various transactions, or contemplated transactions, discussed in CMG's public disclosures filed with the Securities and Exchange Commission, specifically, transactions with E&E Enterprises Global, Inc.; Blue Horizons Concepts, Inc.; (c) Transmit Program Management LLC; and (d) HDS International Corp. Some documents responsive to this request have been provided, but it seems highly unlikely that Plaintiff's production for this request is complete.

- Request No. 65: Documents concerning posts concerning XA or CMG on the stock board on investorshub.com. Plaintiff has produced documents concerning posts under the pseudonym "giantkiller." To the extent any other pseudonyms were used by Laken or any other CMG insider, these documents should be produced or, if not, affirmation to that effect provided.

### E. Miscellaneous Demands

Finally, Plaintiff has not produced documents in response to the following requests:

- Request No. 56: Documents concerning XA's sale of property (such as furniture) on the Craig's List website, including property that CMG alleges in this action was stolen by Defendants.

- Request No. 60: Documents concerning the allegations in the draft complaint by CMG against James I. Ennis, Michael Vandetty, Scott Bailey, Martin Boyle, Hudson Capital Advisors, Inc., and Connied, Inc.

- Request No. 68: Communications with specified individuals and entities concerning the allegations in this action.

                    *       *       *       *

Thank you for Your Honor's consideration of these issues.

                                        Very truly yours,

                                        *[signature]*

                                        Scott R. Matthews

cc:   Seth Lehrman, Esq. (via email)

{11499880:2}