

**WINDELS MARX** | Windels Marx Lane & Mittendorf, LLP

windelsmarx.com

Scott R. Matthews
212.237.1025
smatthews@windelsmarx.com

156 West 56th Street  |  New York, NY 10019
T. 212.237.1000  |  F. 212.262.1215

March 13, 2018

<u>Via ECF</u>

Hon. J. Paul Oetken, United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 706
New York, New York 10007

      Re:    *CMG Holdings Group, Inc. v. Joseph Wagner, et al.*
              15-cv-05814-JPO

Dear Judge Oetken:

      This firm represents the Defendants in the above-referenced action. I write at the Court's direction to address certain discovery issues that the parties have been unable to resolve despite numerous efforts to do so, including the exchange of correspondence and telephone conferences on March 12 and 13, 2018. Defendants respectfully request an informal conference concerning documents that Plaintiff and Third-Party Defendants Glenn Laken and Alexis Laken have failed to produce, despite repeated promises to do so and this Court's May 13, 2017 Order requiring production of many of the requested documents. (Dkt. 58).

      On February 8, 2018, I wrote concerning numerous discovery issues. (Dkt. 72). On February 13, 2018, Plaintiff responded, stating that additional documents responsive to some of the requests would shortly be produced. (Dkt. 74). Despite the further production, many documents remain outstanding. In addition, Plaintiff's letter to the Court included two false statements concerning communications with and payments to Plaintiff's information technology consultant who performed the purported investigation of Defendants' alleged deletion of company data, Pedro Faria. In fact, Plaintiff failed to produce hundreds of email communications with Mr. Faria dated back to the middle of 2014, thereby causing significant prejudice to Defendants.

**Deficiencies in Plaintiff's Production and False Statements**

    **I.**    **CMG's False Statements Concerning the Existence of Documents Regarding its Purported IT Investigation**

      Defendants' February 8, 2017 letter stated that Plaintiff had failed to produce any documents evidencing any "IT investigation" despite Plaintiff's previous representation that such documents would be produced. (Dkt. 72). One would expect Plaintiff to be in possession of numerous documents, given that Plaintiff alleges it discovered at some point after Defendants

{11515297:1}



Hon. J. Paul Oetken
March 13, 2018
Page 2

resigned from XA in 2014 that Defendants had formed a conspiracy to, *inter alia*, divert business from XA, steal property from XA and delete XA's computer and physical records to conceal such wrongdoing. Indeed, the words "IT", "erase", "delete", "destroy", "recover" and "restore" appear in the Second Amended Complaint seventy-six (76) times. Moreover, Plaintiff's Response to Defendants' Document Demand, dated December 21, 2016, states that responsive documents would be produced. Despite this, Plaintiff produced no communications with Mr. Faria, who allegedly conducted the investigation and recovered the data, no report authored by Mr. Faria, no payments to Mr. Faria, and no other documents evidencing that any such computer investigation actually took place, much less that evidence in support of these allegations exists.

Plaintiff's February 13, 2018 letter to the Court attempted to justify Plaintiff's non-production, stating that no documents exist:

> Pedro Faria performed IT consulting work to XA through Radiant Services, an IT services provider. Mr. Faria identified the data which Defendants deleted or attempted to delete. In addition, Mr. Faria recovered this data for Plaintiff. Plaintiff did not have any contract or engagement letter with Mr. Faria. Accordingly, there are no documents responsive to requests 61 and 62 seeking [a] retainer agreement or communications between Plaintiff and Mr. Faria. Mr. Faria has not authored any report. Plaintiff has not made any payments to Mr. Faria. (Dkt. 72).

These statements are false and misleading.

On March 1, 2018, just hours before his non-party deposition later that morning, Mr. Faria produced *hundreds* of email communications with Glenn Laken, Alexis Laken, Barbara Laken, and other employees of Plaintiff concerning the investigation. This directly contradicts Plaintiff's statement that no such communications exist. In addition, Mr. Faria testified that CMG and/or the Lakens paid him directly for his services, such that the statement that "Plaintiff has not made any payments to Mr. Faria" is also false.

Further, the few documents concerning the IT investigation that Plaintiff did provide in the recent production after February 13, 2018 were produced in misleading form. CMG produced a spreadsheet (XA0629524) purporting to show that certain email accounts and backup files were deleted in September 2014. Mr. Faria, however, produced a more complete spreadsheet, showing that deletions occurred as a matter of course well before the period in question (and other documents showing that the email accounts were restored no later than September 30, 2014 and that Plaintiff itself instructed Mr. Faria to delete employee email accounts).

{11515297:1}



Hon. J. Paul Oetken
March 13, 2018
Page 3

Plaintiff's misleading production and false statements concerning the existence of documents regarding the purported IT investigation are extremely prejudicial to Defendants. First, Plaintiff's communications with Mr. Faria should have been produced *years* ago. Instead, Defendants received them only hours before Mr. Faria's deposition, obviously frustrating Defendants' preparation for the deposition. Plaintiff acknowledges this prejudice and Plaintiff's counsel has offered to pay the witness fees and transcription costs associated with a second deposition of Mr. Faria, but that does not cure the harm to Defendants. If Plaintiff truly did not possess these documents, Defendants should have been notified of that fact at the beginning of discovery so that Defendants could have attempted to obtain them from third parties, rather than state that documents would be produced time and time again only to withhold them. Now, Defendants' efforts to obtain these documents from such third-parties are hampered due to the passage of time. Indeed, Radiant Resources, Inc., the firm that retained Mr. Faria to service XA's IT needs, informed Defendants in response to a subpoena that it no longer has any documents other than a few invoices due to a switch of its servers, and that Gary Ciliberto, the Radiant representative who services Plaintiff's account to whom Mr. Faria reported, is no longer employed by Radiant, thereby frustrating Defendants' ability to obtain documents and information concerning these issues.

Defendants have also incurred significant costs associated with prior motion practice and third party discovery to obtain these documents that could have been avoided had CMG produced complete documents either when they were originally due or even in compliance with the Court's May 2017 Order.

As a result of Plaintiff's willful failure to comply with its discovery obligations and this Court's May 3, 2017 Order, Defendants respectfully request that the allegations concerning deletion of data be stricken from the Complaint pursuant to F.R.C.P. 37(b)(2).

II. **Corporate Governance Documents**

As noted in my February 8, 2018 letter, Plaintiff has not produced corporate governance documents responsive to Request No. 8 (by-laws, certificate of incorporation, Board minutes and resolutions, etc.); Request No. 34 (Glenn Laken's election or appointment to CMG's Board, any position Mr. Laken held at CMG or XA, and the reporting of Mr. Laken's assumption of any office or power at CMG or XA to the SEC, shareholders, or any other entity); Request No. 35 (how Mr. Laken came to control CMG); and Request No. 41 (certain meeting minutes and resolutions from the CMG Board of Directors concerning issues relevant to this litigation). (Dkt. 72). In response, Plaintiff stated that it had already produced certain corporate governance documents, and that "Plaintiff has produced all requested documents in its possession and custody which are responsive to requests 8, 34, 35, and 41" and that Plaintiff had subpoenaed



Hon. J. Paul Oetken
March 13, 2018
Page 4

Darren Ofsink, Esq., Plaintiff's former counsel, to obtain additional responsive documents in his possession. (Dkt. 74).

Plaintiff's recent productions included some, but not all, corporate governance documents. The documents also appear to have been part of a litigation file from a separate lawsuit not involving Defendants, rather than documents compiled from Plaintiff's own files in response to Defendants' requests. Further, none of the documents produced relate to Mr. Laken's assumption of control over CMG, his appointment to any office at CMG, or any notification thereof to the SEC or shareholders. CMG is a public company that presumably keeps copies of its corporate records. Similarly, it is assumed that Mr. Laken would retain copies of documents relevant to his position at CMG. None of these documents have been produced.

Plaintiff stated that it was seeking to obtain documents from its former attorney, Darren Ofsink, Esq. through a subpoena that had a return date of March 2, 2018. On March 12, 2018, Plaintiff's counsel confirmed that not only had Plaintiff not received any documents from Mr. Ofsink, but that Plaintiff had not been able to serve Mr. Ofsink. That day, Plaintiff gave notice of another subpoena upon Mr. Ofsink, with a return date of March 27, 2018. Thus, whether and when Mr. Ofsink will produce documents is entirely speculative.

### III.   CMG Financial and Oversight Documents

Plaintiff has still not produced all documents responsive to Request No. 13, 29, 38, 39, 42, 43, 44, 47, and 48, which seek American Express coded statements, documents concerning CMG's oversight and review of XA's operations and financial statements, and documents concerning XA's and CMG's revenues and profits. In February, Plaintiff informed the Court that it has already produced certain documents in response to these demands and that "Plaintiff will serve a supplemental production on February 16 that is further responsive to requests 13, 29, 38, 42, 43, 44, 47, and 48," which documents will include "financial statements from 2014 and 2015." (Dkt. 74). Plaintiff also stated in its February 13, 2018 letter to the Court that Plaintiff did not have custody of post-2014 audit documents, but was in the process of meeting and conferring with Anderson Bradshaw, one of Plaintiff's former auditors, to obtain responsive documents. I understand that those discussions remain ongoing.

After reviewing the recent productions, it is apparent that many documents remain outstanding. First, although a limited number of American Express statements for Jeff Devlin and Ron Burkhardt were produced, Plaintiff still has not produced statements reflecting charges made by Glenn Laken or Alexis Laken, despite the production of documents suggesting that both had corporate credit cards (XA630725, XA630754) and this Court's May 3, 2017 Order directing the production of such documents. (Dkt. 58). In addition, no post-2014 audit records



Hon. J. Paul Oetken
March 13, 2018
Page 5

were produced and, contrary to the specific representation in the February 13, 2018 letter, Plaintiff did not produce 2014 and 2015 financial statements. No explanation has been provided for the continued failure to produce financial documents Plaintiff itself is responsible to maintain.

### IV. Unclean Hands Defense

Many documents concerning Defendants' unclean hands defense remain outstanding, including documents concerning: transactions between CMG and entities with which Mr. Laken, or a family member, has an interest (Request No. 49 and 50); Mr. Laken's agreement with Sol Mlot (Request No. 66); and transactions, or contemplated transactions, discussed in CMG's public disclosures (Request No. 67).

Plaintiff recently produced documents identifying some, but not all, of Mr. Laken's trading activity of various stocks, including CMG. Plaintiff and Mr. Laken state that they have produced all documents in their possession, custody or control, but no statements were produced for trades made by Mr. Laken under the name of Barbara Laken or Sol Mlot, which we know to exist. Also, the production is incomplete, as no documents from April, May, and June 2014 or during the period of 2015 to date were produced. The Court ordered these documents to be produced in May 2017.

### V. Miscellaneous Demands

Finally, Plaintiff has still not produced documents in response to the following requests:

- Request No. 60: Documents concerning the allegations in the draft complaint by CMG against James I. Ennis, Michael Vandetty, Scott Bailey, Martin Boyle, Hudson Capital Advisors, Inc., and Connied, Inc.

- Request No. 68: Communications with specified individuals and entities concerning the allegations in this action.

        *    *    *    *

Thank you for Your Honor's consideration of these issues.

Very truly yours,

Scott R. Matthews

cc: Seth Lehrman, Esq. (via email)

{11515297:1}