

March 16, 2018

<u>Via ECF</u>

Hon. J. Paul Oetken, United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 706
New York, New York 10007

RE:   CMG Holdings Inc. v. Joseph Wagner, *et al.*
      <u>Civil Action No. 15-cv-05814-JPO</u>

Dear Judge Oetken:

    Since August 25, 2017, Plaintiff and Third-Party Defendants have produced more than 30,000 pages of documents responsive to Defendants' requests in repeated efforts to comply with the Court's May 13, 2017 Order requiring production. (Dkt. 58)  In addition, Plaintiff's undersigned counsel has repeatedly conferred with Defendants' counsel through email, correspondence and by telephone to address Defendants' document requests and the production by Plaintiff and Third-Party Defendants.

    On February 13, 2018, Plaintiff responded to Defendants' February 8, 2018 letter motion, representing that an additional production would be made by February 16.  Accordingly, on February 16, Plaintiff served 4,009 pages of documents (Production Number 08 -- XA0628178-XA-0632187) on Defendants' counsel.  This production was responsive mostly to document requests related to the CMG Financial and Oversight and Unclean Hands Defense categories discussed below.  On February 23, 2018, Plaintiff produced 869 pages of documents responsive to document request number 60 (Production 09 -- XA0632188-XA0633057).

    Below, Plaintiff responds to each of the document categories addressed in Defendants' motion.

## I.    Documents Concerning Plaintiff's IT Investigation

**Requests 44, 61, 62 and 63**

    Defendants contend that they suffered extreme prejudice because (1) the timing of email production from Mr. Faria prevented their adequate preparation for his deposition; (2) that Defendants did not seek this production from Mr. Faria and Radiant before January 24, 2018 because they relied on Plaintiff to make this production; and (3) that Defendants incurred

425 North Andrews Avenue, Suite 2, Fort Lauderdale, Florida 33301
Office: 954-524-2820 | Facsimile: 954-524-2822

Hon. J. Paul Oetken,
March 16, 2018
Page 2

significant costs associated with prior motion practice and non-party discovery. Defendants request that the Court strike Plaintiff's data deletion allegations pursuant to Fed.R.Civ.P. 37(b)(2).

Defendants have known Pedro Faria or of him since June 2014. Defendants have known that Plaintiff alleged that Mr. Faria had deleted XA data at Defendant Jean Wilson's express instruction since August 2015, if not earlier. Yet, Defendants chose not to pursue any discovery from Mr. Faria or Radiant, the company that assigned him to XA, until January 2018. Plaintiff alleged that Pedro Faria deleted XA data at the express instruction of Defendant Jean Wilson. Complaint, (Dkt. 19) ¶ 180(m). Defendants requested documents related to this alleged data deletion and Plaintiff's investigation of this deletion through document requests 44, 61, 62 and 63.

Defendants contend that Plaintiff previously "failed to produce *any* documents evidencing any 'IT investigation'" responsive to these requests. (emphasis added) However, Defendants fail to acknowledge that Plaintiff previously produced 1,878 documents that are responsive to this series of document requests. However, there were few emails produced to and from Mr. Faria and/or Radiant Resources.

On February 13, 2018, Plaintiff's undersigned counsel filed a letter in response (Dkt. 74) to Defendants' letter motion (Dkt. 72). This letter stated the following concerning document requests related to Plaintiff's IT Investigation:

> Pedro Faria performed IT consulting work to XA through Radiant Services, an IT services provider. Mr. Faria identified the data which Defendants deleted or attempted to delete. In addition, Mr. Faria recovered this data for Plaintiff. Plaintiff did not have any contract or engagement letter with Mr. Faria. Accordingly, there are no documents responsive to requests 61 and 62 seeking retainer agreement or communications between Plaintiff and Mr. Faria. Mr. Faria has not authored any report. Plaintiff has not made any payments to Mr. Faria.

These statements are correct in most respects. However, my statement was incorrect in two material respects. First, there were communications between Plaintiff and Mr. Faria as evidenced by the several hundred emails that Mr. Faria produced. Second, there were payments made by Plaintiff to Mr. Faria. I previously apologized to Defendants' counsel for my unintentional misstatement.

Two weeks later, on March 1, Mr. Faria produced several hundred emails in response to Defendants' subpoena. Mr. Faria made this production approximately eight hours before his deposition. Certainly, Plaintiff understands that Defendants' counsel did not have sufficient time to review the documents produced by Mr. Faria before his March 1 deposition. Accordingly, undersigned counsel has offered to pay the witness fee and transcription costs for additional deposition testimony of Mr. Faria concerning these documents. Notwithstanding the timing of Mr. Faria's production, Defendants questioned Mr. Faria on several of the emails that he produced, questioned him on two email documents that Plaintiff had previously produced, and questioned him about emails that Defendants had produced. Defendants had produced dozens of emails

Hon. J. Paul Oetken,
March 16, 2018
Page 3

exchanged between Jean Wilson and Mr. Faria and other Radiant Resources personnel confirming that Ms. Wilson retained access to her XA email following her resignation from XA.

In addition, Plaintiff is presently searching for additional email to or from Mr. Faria and/or Radiant that are relate to Plaintiff's IT investigation. Plaintiff made a supplemental production on March 15. However, this production did not include documents responsive to this request. Plaintiff intends to produce additional responsive emails that are identified as part of a March 20, 2018 production.

Defendants have not suffered any prejudice, let alone the extreme prejudice that they claim. They have deposed Mr. Faria and examined him on email. In addition, Defendants are able to take additional deposition testimony from him on the other documents which he produced. Furthermore, undersigned counsel has agreed to pay the costs associated with this additional testimony. Plaintiff, Third-Party Defendants and their counsel have been working diligently to comply with this Court's orders and their discovery obligations. Moreover, Plaintiff and Third-Party Defendant have substantially complied with the Court's orders through their supplemental productions and extensive conferral with Defendants' counsel.

The parties have been engaged in significant discovery issues on both sides, including Plaintiff seeking to address significant issues of non-production by Defendants in a letter motion that is being filed contemporaneously with this opposition letter. Plaintiff respectfully requests that the Court hear the issues concerning Defendants' production deficiencies at the same conference as Defendants' letter motion is heard.

## II.     Corporate Governance Documents

Plaintiff has produced at least 1,750 of documents responsive to requests for CMG's corporate governance documents (requests 8, 34, 35, and 41). In addition, Plaintiff's initial production contained CMG's annual reports, financial statements, SEC filings and other corporate governance documents which Defendants have requested. Defendants are capable of searching this initial production set to locate such documents. In addition, Plaintiff requested that its former corporate counsel, Darren Ofsink, turnover copies of responsive corporate governance documents which Plaintiff believes that Ofsink has in his possession. Plaintiff was unable to effect service of a subpoena directed to Mr. Ofsink at his office address at 230 Park Ave., Suite 2, New York, New York. On March 12, 2018, Mr. Ofsink acknowledged that he would accept service of the subpoena by mail and provided an address for service. Accordingly, on March 12, mailed the subpoena to Mr. Ofsink seeking production of such documents.

## III.     CMG Financial and Oversight Documents

Plaintiff has previously produced more than 1,870 documents responsive to these requests (29, 38, 42, 43, and 44).

- Request 13: Glenn Laken has contacted American Express and requested credit card statements which reflect charges made by him and/or Alexis Laken. Declaration of Glenn Laken,

Hon. J. Paul Oetken,
March 16, 2018
Page 4

attached as **Exhibit A** ("Laken Decl."), ¶ 21. American Express has confirmed to Mr. Laken that they are producing these statements to him. *Id*., ¶ 22. Plaintiff will produce these American Express statements within five days of receipt.

- Requests 47 and 48:  Plaintiff has produced more than 1,737 documents responsive to requests 47 and 48 for "[a]ll documents concerning XA's [and CMG's] revenues and profits since 2014".  Plaintiff had served a subpoena on Anderson Bradshaw, the accounting firm which audited CMG's 2014 fiscal year financial statements.  Plaintiff's counsel is continuing to meet and confer with Anderson Bradshaw's counsel concerning the auditor's response to the subpoena.  Plaintiff is seeking production of the auditor's work papers for the 2014 fiscal year audit.  Anderson Bradshaw has not produced any documents as of this date.  Plaintiff may file a motion if it is unable to secure an agreement for production of the audit work papers.

Plaintiff has attempted to serve subpoenas on CMG's former accountants John Scrudato, CPA and Terry Johnson, CPA to obtain additional financial records from 2014-2015 that would be responsive to these requests.  However, Plaintiff has been unable to effect service on Scrudato or Johnson.

Plaintiff is producing CMG's financial statements from 2014 and 2015 as part of the Form 10K Annual Reports that it filed.  Plaintiff will also produce an XA Quickbooks file that it has located

### IV.     Unclean Hands Defense

- Requests 49, 50, 66 and 67:  Other than the additional documents that Plaintiff has indicated that will produce, Plaintiff and Glenn Laken do not have possession or custody of additional documents responsive to these requests. Laken Decl., ¶¶ 24-27.

- Requests 31 and 33: Plaintiff produced brokerage statements that are responsive to requests 31 and 33 as part of its supplemental production on February 16, 2018.  These brokerage statements were from accounts maintained by Infinite Alpha, Inc. which were controlled by Barbara Laken. Laken Decl., ¶¶ 28-30. There are no brokerage statements for accounts titled in Barbara Laken's name individually that are responsive to these requests. *Id*., ¶ 30.  Neither Plaintiff or Glenn Laken have possession, custody or access to any account statements under the name of Sol Mlot. *Id*., ¶ 31.

### V.      Miscellaneous Demands

- Request 60:  On February 23, 2018, Plaintiff produced 869 pages of documents responsive to document request number 60 (Production 09 -- XA0632188-XA0633057) concerning allegations in the draft complaint by CMG against James Ennis, Michael Vandetty and others. Plaintiff is not aware of any other documents that are responsive to this request. Laken Decl., ¶ 35.

- Request 68:  Plaintiff has previously produced at least 1,158 documents that are responsive to this request.  Plaintiff, through counsel, has conducted searches to identify additional documents

Hon. J. Paul Oetken,
March 16, 2018
Page 5

that are responsive to this request and has identified approximately another 1,500 emails (not including family/related documents) that were sent to or from the individuals specified in this request. Accordingly, Plaintiff will produce the approximately 1,500 emails, plus any family or related documents, as responsive to this request as part of a supplemental production to be made on March 20, 2018.

Thank you for considering these issues.

Very truly yours,

*Seth Lehrman*

Seth Lehrman

cc:    Scott R. Matthews, Esq.