

Case 1:15-cv-05814-JPO   Document 81   Filed 03/20/18   Page 1 of 4

**WINDELS MARX** | Windels Marx Lane & Mittendorf, LLP

windelsmarx.com

Scott R. Matthews
212.237.1025
smatthews@windelsmarx.com

156 West 56th Street | New York, NY 10019
T. 212.237.1000 | F. 212.262.1215

March 20, 2018

<u>Via ECF</u>

Hon. J. Paul Oetken, United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 706
New York, New York 10007

      Re:    ***CMG Holdings Group, Inc. v. Joseph Wagner, et al.***
               **15-cv-05814-JPO**

Dear Judge Oetken:

      This firm represents the Defendants in the above-referenced action. I write in response to Plaintiff's assertion that Defendants failed to produce certain documents.

      In its March 16, 2018 letter filed on the heels of Defendants' own letter motion addressing Plaintiff's discovery violations, Plaintiff argues that Defendants failed to produce Defendants' credit card statements and XA project folders and binders. Specifically, Plaintiff asserts that Defendants failed to produce credit card statements identifying charges for Studio AG or XA expenses, or those for which Defendants sought reimbursement from Plaintiff. Plaintiff also alleges that Defendants removed physical project binders and electronic project folders from XA and failed to produce the documents and data contained therein. Each allegation is demonstrably wrong and addressed below.

### I.   <u>Credit Card Statements</u>

      Plaintiff argues that Defendants failed to produce any credit card statements for accounts or cards issued to Joseph Wagner or Darren Andereck or any of the other individual Defendants and, instead, only produced sixteen spreadsheets in response to Requests No. 54, 56, 58, 60, 62, 66 and 67.

      In December 2016, Defendants objected to Plaintiff's document requests seeking personal credit card statements on the grounds that they include credit card purchases for personal matters and thus are over broad, unduly burdensome, and seek documents that are neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Defendants offered to produce, and did produce, documents identifying the credit card charges that were paid by XA. In that regard, Defendants produced spreadsheets that were contemporaneously prepared using American Express' own software and

{11518242:1}

NEW YORK, NY | NEW BRUNSWICK, NJ | MADISON, NJ | STAMFORD, CT



Hon. J. Paul Oetken
March 20, 2018
Page 2

submitted to XA for payment directly to American Express. These documents are identified as Bates No. Def00015757-00015884, and reflect credit card charges made by Defendants Joseph Wagner, Darren Andereck, Michael Day, and Jessie Lomma for the period December 22, 2012 – September 20, 2013 and October 23, 2013 – May 21, 2014. These documents were produced in response to Plaintiff's Request No. 19 ("All documents concerning or reflecting XA corporate credit cards or credit cards of XA officers or employees used to pay XA expenses."), as well as the Requests referenced in Plaintiff's letter.

These documents were produced in the manner in which they were submitted to XA. Mr. Andereck testified about this practice in a third party deposition he gave in the lawsuit now pending in New York State Supreme Court entitled, *Ronald Burkhardt v. XA, The Experiential Agency, Inc. and CMG Holdings, Inc.*, Index No. 653173/2014, in which XA and CMG were represented at the time by Eaton & Van Winkle LLP, the same firm that then represented Plaintiff in this action.[1] At his deposition compelled by subpoena, Mr. Andereck testified that because there was no credit line available to XA or corporate credit cards issued to XA employees, he obtained a personal credit card account from American Express to use for XA's benefit, with XA paying the charges directly to American Express. Mr. Andereck testified that it was his practice to download the spreadsheet from American Express, enter job codes so that the charges could be assigned to the appropriate XA client, review the charges made by other XA employees and reconcile the job codes, and send the spreadsheet to the then COO, Jean Wilson, for payment by XA. Again, Defendants produced these documents.

On March 16, 2017, Plaintiff also issued a subpoena to American Express seeking these credit card statements. Defendants objected to the subpoena on grounds that Defendants possess a privacy interest with respect to information contained in their own financial documents and that the material sought is neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Defendants objected to the disclosure of credit card expenditures for which Defendants did *not* seek payment, noted that the credit card records sought from American Express will not evidence which expenditures were subject to payment requests and objected to the production of any records after 2014. On March 30, 2017, following the issuance of the objection, I conferred with Plaintiff's then counsel in an attempt to resolve the dispute. Although we were unable to come to an agreement, Plaintiff never applied for production of these materials and, to my knowledge, American Express did not respond to the subpoena.

Finally, Defendants objected to producing personal credit card statements on grounds that the documents were already in Plaintiff's possession. In or about January or February 2014, prior to the initiation of this litigation, Defendants provided three (3) years' worth of credit card

---

[1] I previously referred Plaintiff's current counsel to this testimony.

{11518242:1}



Hon. J. Paul Oetken
March 20, 2018
Page 3

statements and spreadsheets to XA's then Executive Chairman and CMG's Director, Ronald Burkhardt. Indeed, Mr. Burkhardt previously submitted an affidavit in which he affirmed receipt of the documents:

> At the time that I conducted my review of XA's business, I was informed that XA did not have a corporate line of credit and, as a result, XA's senior management, Wagner and Andereck, had been using their personal credit cards to fund XA's corporate expenditures in order for XA to meet its obligations. I was told that XA's practice was to reimburse Wagner and Andereck once sufficient revenues were received. Wagner and Andereck submitted three (3) years of their personal credit card statements to me for review. I determined that no expenses charged to XA were outside the normal and ordinary course of XA's business. (Dkt. 30).

Thus, Plaintiff should already have these documents in its possession.

After having done nothing since March 2017 in the face of Defendants' proper objections and the production of the documents actually submitted to XA to substantiate the payments to American Express for legitimate business expenses, and given the fact that Plaintiff's former Director and XA's former Executive Chairman acknowledged reviewing the documents in 2014 (and having found nothing amiss), Plaintiff's request should be denied.

## II.   Physical Project Binders and Electronic Project Folders

Plaintiff also seeks documents concerning XA's projects that were maintained in hard copy in project binders and electronic form in project folders. Defendants deny that they have possession of the documents in either form.

Defendants deny removing any hard copy project binders. Defendants will testify that the binders were located in XA's New York City office when Defendants individually resigned. There is no evidence to support Plaintiff's allegation to the contrary.

Defendants will also testify that the electronic project folders were maintained on XA's computer servers. Following Defendants' resignation of employment, they no longer had access to the servers and, therefore, the project folders, and so cannot now produce them.



Hon. J. Paul Oetken
March 20, 2018
Page 4

Further, Request No. 133 relates to HudsonGray documents, not XA documents. Request No. 137 relates to a project that was cancelled, such that any documents concerning it would be minimal (and which, again, Defendants do not possess).

Finally, Plaintiff has repeatedly proclaimed that it has "recovered" the contents of the XA servers that Defendants purportedly deleted, and Plaintiff even produced approximately 590,000 pages of documents to "evidence" that supposed recovery. Since the project folders existed on XA's servers, Plaintiff must already have the documents in its possession. The request should be denied.

      \*   \*   \*   \*

I look forward to addressing these issues with the Court at its convenience and will available each day during the week of March 26, 2018 should the Court wish to schedule a telephone conference.

            Very truly yours,

            Scott R. Matthews

cc: Seth Lehrman, Esq. (Via ECF)

{11518242:1}