

**Windels Marx Lane & Mittendorf, LLP**

windelsmarx.com

Scott R. Matthews
212.237.1025
smatthews@windelsmarx.com

156 W. 56th Street | New York, NY 10019
T. 212.237.1000 | F. 212.262.1215

August 13, 2018

**Via ECF**

Hon. J. Paul Oetken, United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Courtroom 706
New York, New York 10007

    Re:    ***CMG Holdings Group, Inc. v. Joseph Wagner, et al.***
              **15-cv-05814-JPO**

Dear Judge Oetken:

    Pursuant to the Court's Order, dated May 11, 2018 (Dkt. 93), the parties submit a joint letter detailing outstanding discovery disputes raised by Defendants, respectfully request leave to exceed the page limit set in the Order, and request a telephone or in person conference to address these issues. The parties will address outstanding discovery disputes raised by Plaintiff in a separate joint filing.

**Defendants' Application for Sanctions Due to Repeated Discovery Abuses**

**I.   Plaintiff Has Not Complied With the Court's May 2017 and April 12, 2018 Orders**

    On April 12, 2018, the Court ordered Plaintiff and Third Party Defendants to review files and produce additional documents. They have produced certain additional documents, but not what is required by the Court's Orders.

    **A.   Glenn Laken Has Not Produced All Trading Records**

    Despite numerous Court orders, Mr. Laken has still not produced records of all trades made of CMG stock.

    Defendants requested the production of all documents concerning the purchase or sale of CMG stock by Glenn Laken, whether individually or through another person or entity (Req. 30), and documents concerning trades by Mr. Laken with respect to the stock of five other companies. (Req. 31.) Over his refusal to produce such documents, on May 3, 2017 the Court ordered Mr. Laken to produce them. (Dkt. 58, p. 9.) After not producing records for close to a year, Mr. Laken produced some records for Infinite Alpha, an entity owned by his wife Barbara



**WINDELS MARX** | Windels Marx Lane & Mittendorf, LLP

Hon. J. Paul Oetken
August 13, 2018
Page 2

Laken, but even those were missing records for April, May, and June 2014, and after 2015. In response to another motion, Mr. Laken submitted a Declaration in which he stated that although he had produced records for Infinite Alpha, he did "not have possession or custody of additional documents responsive to these requests." (Dkt. 79-1, ¶¶ 29, 32.) Mr. Laken also stated, under oath, that "I'm not aware of any individual brokerage accounts titled in Barbara's name that would have statements responsive to these requests." (*Id.*, ¶ 30.)

On April 12, 2018, this Court ordered Mr. Laken to "produce all documents reflecting any trading in CMGO, documents involving his trading or trading of entities or persons he controlled within one month." (Tr., p. 30-31 attached hereto as Exhibit A.) The Court's skepticism was warranted: on May 14, 2018, Plaintiff produced records of trades from an E*Trade account under Mrs. Laken's name – which, just two months prior, Mr. Laken swore did not exist – documenting the May 10, 2018 sale of 3,933,000 CMG shares held in that account. (May 10, 2018 screen shot attached hereto as Exhibit B.) Counsel advised in a cover letter dated May 14, 2018 that Mr. Laken would produce the May 2018 statement for this account when it becomes available, but he has yet to do so. Counsel also stated that "Mr. Laken will testify that he has produced all trading records and brokerage statements in his possession, custody, and control that reflect his trading in CMG stock and the other stocks that are identified in this request."

Neither Mr. Laken's promised testimony nor his excuses below satisfy the obligation to produce a complete set of trading records, which this Court has *twice* ordered. First, Mr. Laken swore on March 16, 2018 that he did not know of any brokerage account under Mrs. Laken's name, yet two months later produced trading records for just such an account. And, the records show that Mr. Laken traded in that very account *the day before he signed the Declaration*, suggesting that this was not an innocent oversight but rather a willful lie. (*See* XA664702 accompanying this letter by email.) Counsel now characterizes Mr. Laken's statement as merely "mistaken." But Plaintiff cannot explain how Mr. Laken did not know about an account he traded in the *day before* signing a sworn statement, nor how Mr. Laken forgot about owning almost 4 million shares, nor why, after so many lies, Mr. Laken's word should now be trusted.

Second, Plaintiff asserts below that Mr. Laken personally owns no shares of CMG, and that the recent production of stock certificates for 8,811,952 CMG shares held by companies owned by Mrs. Laken should satisfy his obligation to produce trading records. Statements publicly filed with the SEC show, however, that, as of November 1, 2016, Mr. Laken owned 49,156,925 shares of CMG stock (40 million of which were identified as warrants and options). Even if those warrant and options were never exercised, as Plaintiff contends, that leaves Mr. Laken with over 9 million shares. Mrs. Laken testified at her deposition, moreover, to owning between 15-17 million CMG shares. Thus, even if these share certificates could replace the trading records – and they cannot – they have not provided documentation for millions of shares that the Lakens have stated, under oath, that they own.

{11588423:1}


Hon. J. Paul Oetken
August 13, 2018
Page 3

  Third, they admit below that they have not produced all trading records ("Despite the non-production of certain statements"), but seek to justify that failure to comply with the Court's orders by arguing that the documents produced thus far do not support "Defendants theory that Mr. Laken is engaged in stock manipulation." Actually, the E*Trade account shows that Mr. Laken sold almost 4 million shares just as the stock experienced a brief surge in price when the then scheduled settlement conference was hyped on the stock message board as a huge impending payday for CMG (and Mr. Laken has already admitted to using one pseudonym on that message board.). In addition, the statement that "Mr. Laken previously produced statements that fully reflected every CMG share held by the Lakens and the entities they control", is not accurate – there are millions of shares unaccounted for – and does not satisfy the requirement to produce records of trades made of those shares. In any event, the fact that a partial production does not support a particular theory does not justify withholding the rest of the production. Finally, Plaintiff's constantly changing story regarding the Lakens' stock ownership demonstrates that they have never made a comprehensive search for trading records. Plaintiff first asserted during this meet and confer process that the only accounts in which the Lakens traded CMG stock are the Merrill Lynch account and the E*Trade account, despite the fact that Laken had already produced an incomplete set of statements for a J.H. Darbie account, which held 340,000 CMG shares, and one statement, dated February 15, 2014, for a Scottrade account that held 120,000 CMG shares. Only then did Mr. Laken "discover" yet another trading account, this time for Scottsdale Capital Advisors. Based upon Mr. Laken's constantly changing story and the fact that millions of shares are unaccounted for, it is doubtful that Mr. Laken has located all of the responsive trading accounts. And it is indisputable that Mr. Laken has not produced all of the statements for the accounts he has located. There is no excuse for this failure, as Mr. Laken could have – years ago – requested a trading history from all of these accounts. This amounts to a willful decision to ignore the Court's Orders.

  It is not disputed that Mr. Laken has failed to produce all of his trading records, and that he has made a series of false statements in the past to justify that failure. The parties disagree, however, as to whether Mr. Laken should comply with two clear and unambiguous Orders by this Court to produce those records. As the Court recognized during the April 12, 2018 conference, it is utterly unbelievable that a professional stock trader like Mr. Laken does not have records documenting the status of millions of shares he owns. Plaintiff's excuses and justifications below are either irrelevant or simply false. The Court has already ordered the production of these documents numerous times. Mr. Laken should not be allowed any further time or excuses, but should be sanctioned for refusing to comply.

### B. Plaintiff Has Not Produced Complete Financial Records

  The Court also directed Plaintiff to produce financial documents for 2014 to the present. (Tr., p. 25, Ex. A.) Plaintiff's most recent production contained Profit and Loss statements for CMG for 2015, 2016 and 2017 – a total of three pages – but did not include any back up for

{11588423:1}



Hon. J. Paul Oetken
August 13, 2018
Page 4

those documents or financial statements. In his March 16, 2018 letter to the Court (Dkt. 79), counsel stated that Plaintiff would produce QuickBooks files and that Plaintiff subpoenaed XA's former auditors, John Scrudato and Anderson Bradshaw, for additional documents. Neither set of documents, however, have been produced. The only QuickBooks files Plaintiff previously produced are for various months in 2012 – 2014 and one month in 2016 and are password protected such that they cannot be accessed. Plaintiff now claims that it was unable to subpoena Mr. Scrudato and has been unable to obtain documents from Anderson Bradshaw. Plaintiff has had years to compile these documents, which should have been in its possession in the first place. Plaintiff should be sanctioned absent compliance with Defendants' demands for full financial documents.

### C. Plaintiff Has Not Produced Laken Emails or Additional Ofsink Communications

At the April 12, 2018 conference, the Court ordered Plaintiff to (1) submit a list of search terms to Defendants' counsel designed to capture communications between CMG and its principals and Darren Ofsink, and to search for additional corporate governance documents(Ex. A, p. 18-19); and (2) to perform another sweep of Mr. Laken's email account, and counsel for Plaintiff agreed to meet and confer with Plaintiff to determine the appropriate search terms. (Ex. A, p. 18.) Plaintiff did not offer to meet and confer with Defendants concerning the search terms until Defendants raised this issue on August 1, 2018. Plaintiff now advises that it will make a supplemental production of these documents on August 15, 2018. We advise the Court now of this potential issue, and depending on the contents of the supplemental production, reserve the right to seek any outstanding Laken emails or Ofsink communications.

### D. Plaintiff's Refusal to Follow Court's Discovery Orders Has Prejudiced Defendants

Plaintiff's repeated and willful violations of its discovery obligations have caused significant prejudice to Defendants. Plaintiff's first production was a document dump of over 590,000 pages of mostly irrelevant documents. More recent productions have included emails formatted so that only one word appears on each line, making reading difficult and transforming short emails into documents hundreds of pages long. Plaintiff withheld internal email communications concerning its IT investigation until after Pedro Faria, the external IT consultant leading the investigation, was deposed. Plaintiff and Mr. Laken have refused to produce complete trading records, despite *two* direct Orders from this Court. And, Plaintiff's attempts to avoid producing complete trading records include a willful lie by Mr. Laken that the documents do not exist. Defendants should not be required to conduct Mr. Laken's deposition without use of these trading documents to demonstrate that this lawsuit is a sham designed to cover Mr. Laken's trading of CMGO stock. Plaintiff's allegations should be stricken, and monetary sanctions levied for the costs associated with Defendants' three letter motions concerning these issues. If the Court is not satisfied with this record, Defendants seek leave to submit formal briefing on the issue.

{11588423:1}



Hon. J. Paul Oetken
August 13, 2018
Page 5

**Plaintiff's Response**
   **I.  A. <u>Glenn Laken has Produced Trading Records to Comply with the Court's Orders</u>**

      Glenn Laken and his counsel have expended considerable time and effort to comply with the Court's Orders. The litigation, which was stayed during June and July, has resumed and Mr. Laken has supplemented his production since the lifting of the stay to further comply with the Court's Orders, including the order that he produce "all documents reflecting any trading in CMGO, documents involving his trading or trading of entities or person he controlled within one month." Mr. Laken does not deny or seek to conceal that he has purchased CMG shares through brokerage accounts. Since May 14, 2018 Defendants have had possession of brokerage documents which reflect all CMG shares held by Glenn Laken, Barbara Laken, Infinite Alpha Inc. and any other entity which Glenn or Barbara Laken control. Despite the non-production of certain statements, Mr. Laken previously produced statements that fully reflected every CMG share held by the Lakens and entities they control. Little, if any, of this production is relevant. Defendants' theory that Mr. Laken is engaged in stock manipulation is unsupported by the evidence. The production shows that CMG shares were purchased by the Lakens years ago, held for years by them, and that no CMG shares were sold, with the exception of $21,000 sold in May 2018 and approximately $200 of shares sold in or about January 2011.

      On April 7, 2014, CMG issued a Common Stock Purchase Warrant (the "Warrant") to Glenn Laken, granting him the right (or option) to purchase 40,000,000 shares of CMG stock at a purchase price of $0.0155 per share for a five year period. Mr. Laken has not exercised any options to purchase CMG shares. Mr. Laken has purchased CMG shares through the two brokerage accounts identified above.

      On February 15, 2018, Glenn Laken produced brokerage statements from five separate brokerage accounts, including from a Merrill Lynch account maintained by Infinite Alpha Inc. The Merrill Lynch brokerage statements that Mr. Laken produced in February 2018 showed that Infinite Alpha had purchased 5,971,952 shares of CMG stock and that these shares were delivered to Infinite Alpha in certificate form in July 2014.

      On March 16, 2018, Mr. Laken submitted a declaration setting forth his efforts to produce various documents, including brokerage statements which reflected trading in CMG shares. (Dkt. 79-1) Mr. Laken stated, *inter alia*, that he did not believe that any account titled in his wife's name, Barbara Laken, held CMG shares. *Id.* He was mistaken. However, Mr. Laken's mistaken statement did not prejudice Defendants.

      After the April 12, 2018 hearing, Mr. Laken continued to work to collect additional documents in compliance with the Court's Order and recognized that an Etrade account titled in his wife Barbara Laken's name held CMG shares. On April 18, 2018, Mr. Laken turned over to undersigned counsel, 96 pages of brokerage statements from this account showing the purchase



Hon. J. Paul Oetken
August 13, 2018
Page 6

of 3,933,000 shares of CMG stock. On May 10, Mr. Laken sold all of the CMG shares that were in the account for $21,291.67. He provided a screen shot showing these trades to undersigned counsel on May 11, 2018. On May 14, 2018, the Etrade account statements and the May 10 screen shot were produced to Defendants along with other documents. This production of Etrade documents showed the purchase and sale of all CMG shares ever held in this account.

Mr. Laken has requested a copy of the May 2018 statement from Merrill Lynch and will provide this in a supplemental production. This statement duplicates the May 10, 2018 screen shot that Mr. Laken previously produced on May 14, 2018. On August 3, 2018, Glenn Laken, through counsel, produced additional brokerage statements from the Infinite Alpha Merrill Lynch and Barbara Laken Etrade accounts and copies of CMG share certificates, which along with prior productions reflect all CMG shares owned in accounts maintained by Glenn Laken, his wife Barbara Laken or Infinite Alpha Inc.

Mr. Laken has produced copies of the following three CMG share certificates reflecting that 8,811,952 CMG shares were held by Infinite Alpha Inc. and/or BMB Financial Inc.: (1) 2,500,000 shares issued on 4/9/2014 to BMB Financial Inc. (Certificate #4065-9); (2) 5,971,952 shares issued on 7/11/2014 to Infinite Alpha Inc. (Certificate # 4076-6); and (3) 340,000 shares issued to Infinite Alpha Inc. on 10/15/2014 (Certificate # 4085-7). Barbara Laken owns Infinite Alpha, Inc. and is a shareholder in BMB Financial Inc. Excluding the unexercised CMG warrants (or options), Glenn Laken does not personally own any shares of CMG stock. Mr. Laken does not maintain any brokerage accounts titled in his name. Likewise, there are no brokerage accounts titled in Mr. Laken's name which hold CMG stock.

Mr. Laken's production reflects that CMG shares were purchased through five accounts: (1) Merrill Edge (Infinite Alpha Inc.); (2) Scottrade Inc. (Infinite Alpha Inc.); (3) JH Darbie & Co., Inc. (Infinite Alpha Inc.); (4) Scottsdale Capital Advisors (Infinite Alpha Inc.) and (5) Etrade Securities LLC (Barbara Laken). Mr. Laken has produced copies of brokerage statements and other documents relating to these brokerage accounts and CMG share certificates which reflect all CMG shares held in these accounts and the disposition of all CMG shares in these accounts, with the exception of the 120,000 CMG shares held in the Scottrade Inc. account.

*Scottrade Inc.*

The table below reflects the CMG shares purchased in each account as reflected in documents that have been produced and the disposition of these shares as reflected in documents that have been produced. Mr. Laken has requested documents from Scotttrade Inc. which reflect the disposition of the 120,000 CMG shares that were held in that account. The Scotttrade Inc. account was closed in or about 2014. Mr. Laken learned that his prior production of Scottrade documents did not reflect the disposition of these shares through undersigned counsel's review of Defendants' draft letter motion. Accordingly, Barbara Laken, the account holder's representative, contacted Scottrade and requested documents which reflect the disposition of

{11588423:1}



**WINDELS MARX** | Windels Marx Lane & Mittendorf, LLP

Hon. J. Paul Oetken
August 13, 2018
Page 7

these shares. Scottrade has advised that they will provide the requested documents to Mrs. Laken on or before August 15. Undersigned counsel will produce the additional Scottrade documents to Defendants upon receipt. That production will reflect all CMG shares held in these accounts and the final disposition of all CMG shares in these accounts.

*Scottsdale Capital Advisors*

Infinite Alpha Inc. purchased 2,961,686 shares of CMG through its Scottsdale Capital Advisors account. In or about January 2011, approximately 16,200 shares of CMG were sold to pay a $200 account fee. On August 13, 2013, the remaining 2,945,486 CMG shares were transferred from the Scottsdale account into Infinite Alpha Inc.'s Merrill Edge account. See XA0628275. Mr. Laken is supplementing his production today with the production of a Scottsdale Capital Advisors account statement from September 2011 and an email from the brokerage dated January 3, 2011. In addition, Mr. Laken has contacted Merrill Lynch and requested copies of documents which reflect the transfer of the 2,945,586 CMG shares from the Scottsdale account into the Merrill Lynch account.

| Brokerage/ Account owner/ Account # | Production #/ Date | CMG stock trades | CMG stock disposition |
|---|---|---|---|
| Merill Edge Infinite Alpha Inc. XXX-43Y10 | 8 Feb. 15, 2018 | 5,971,952 CMG shares purchased | Stock certificate 4076-6 for 5,971,952 shares issued to Infinite Alpha Inc. |
| Laidlaw Infinite Alpha Inc. XXXX9504 | 8 Feb. 15, 2018 | None | None |
| CreditSuisse Infinite Alpha Inc. XXX-XXX298 | 8 Feb. 15, 2018 | None | None |
| Scottrade Inc. Infinite Alpha Inc. XXXX1692 | 8 Feb. 15, 2018 | 120,000 CMG shares purchased | |
| JH Darbie & Co., Inc. Infinite Alpha Inc. D101 | 8 Feb. 15, 2018 | 340,000 CMG shares purchased | Share certificate 4085-7 for 340,000 shares issued to Infinite Alpha, Inc. |
| E-TRADE Securities LLC Barbara Laken XXXX-6701 | 15 May 14, 2018 | 3,933,000 CMG shares purchased | 5/10/2018 3,933,000 CMG shares sold |

{11588423;1}



Hon. J. Paul Oetken
August 13, 2018
Page 8

| Scottsdale Capital Advisors Infinite Alpha Inc. XXXX7663 | August 10, 2018 | 2,961,686 CMG shares (Sept. 2011 stmt) | 1/3/2011 email from Andrea Ritchie at Scottsdale advises that $200 fee must be paid by check or sale of securities in account. 2,945,586 CMG shares were transferred from Scottsdale Capital Advisors account to Merrill Edge account on 8/13/2013. See XA0628275 |

### B. Plaintiff Has Produced Financial Records to Comply with the Court's Orders

Plaintiff had previously produced profit and loss statements for CMG for 2015 through 2017 as well as additional financial records of CMG. On August 3, 2018, Plaintiff produced financial statements, including, balance sheets, profit and loss statements, and general ledgers which reflect XA's activities from 2011 through 2014. On August 6, 2018, Plaintiff produced detailed profit and loss statements of XA from 2016, 2017 and the first quarter of 2018. Plaintiff's 2015 audited financial statements are publicly available and were previously produced. In addition, Defendants have obtained by subpoena XA's bank records from 2009 through 2015.

Plaintiff has not received any production of records from its former auditor Anderson Bradshaw ("AB") in response to the subpoena it previously served. Plaintiff's undersigned counsel met and conferred extensively with AB's counsel in an attempt to obtain production of AB's auditing records but has not received any production. However, AB has refused to produce documents requested by Plaintiff and has insisted that Plaintiff must inspect records at AB's offices in Salt Lake City, Utah and identify the specific records which it is requesting on its computer system. Plaintiff maintains that such an inspection is not necessary and that AB should produce the requested documents without requiring Plaintiff to incur substantial travel and/or expert fees associated with such an inspection. Plaintiff has been unable to effect service of the subpoena on former auditor John Scrudato and has not received any production from Mr. Scrudato.

### C. and D.   Plaintiff Is Applying Defendants' Proposed Search Terms to Comply with the Court's Orders Concerning the Production of Additional Ofsink Communications and Laken Email

On May 14, 2018, Plaintiff produced email and additional documents to comply with the Court's April 12, 2018 Order. However, Plaintiff's counsel did not confer with Defendants' counsel concerning the search terms used to make the May 14 production. On August 2 and 3,

{11588423:1}



**WINDELS MARX** | Windels Marx Lane & Mittendorf, LLP

Hon. J. Paul Oetken
August 13, 2018
Page 9

Plaintiff's undersigned counsel conferred with Defendants' counsel, identifying the search term methodology that Plaintiff used in connection with its May 14 production and to solicit from Defendants' proposed search term methodology. Plaintiff's undersigned counsel received Defendants' proposed search terms on August 3, sent them to Plaintiff's ediscovery service provider the same day and confirmed with the ediscovery service provider that production of documents responsive to Defendants' proposed search terms would be made by August 15, 2018.

### E. Plaintiff and Mr. Laken Have Supplemented their Productions to Comply with the Court's Discovery Orders and Defendants Have Not Been Prejudiced

Plaintiff and Mr. Laken have supplemented their respective productions of financial records, email and brokerage statements to comply with the Court's Orders. Defendants have not suffered any prejudice based on the timing of these productions and will have the full opportunity to examine Plaintiff, Glenn Laken and others at deposition and trial. In addition, Plaintiff's counsel will cooperate with Defendants' counsel to ensure that the scheduling of depositions, including that of Mr. Laken, is coordinated with the adjudication of discovery matters and supplementary productions to facilitate full examinations of parties and witnesses. On August 8, Defendants identified the following three bates ranges as having corrupt formatting XA668177-668336, XA668498-668691, and XA668350-668483. Plaintiff's counsel immediately provided these bates ranges to Plaintiff's ESI consultant who has confirmed that Plaintiff will provide a corrected production of these documents on August 10, 2018.

Plaintiff's undersigned counsel will be out of the country from August 12 through 21. Accordingly, Plaintiff's counsel Seth Lehrman respectfully requests that any conference concerning this matter be set on or after August 22, and that if a conference is set between August 22 and 24 that Mr. Lehrman be permitted to appear by telephone.

Respectfully submitted,

| | |
|---|---|
| Windels Marx Lane & Mittendorf, LLP | Edwards Pottinger LLC |
| /s Scott R. Matthews | /s Seth Lehrman |
| Scott R. Matthews<br>For Defendants/Third Party Plaintiffs | Seth Lehrman<br>For Plaintiff/Third Party Defendants |

{11588423:1}